Filed 10/2/13  Lee v. Castelluccio CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Calaveras)

----

|  |  |
|---|---|
| DON H. LEE, | |
| Plaintiff and Appellant, | C068987 |
| v. | (Super. Ct. Nos. 10CV36874, 10CV37043 & 10CV37048) |
| CHRIS CASTELLUCCIO et al., | |
| Defendants and Respondents. | |

Two competing factions of a homeowners association filed three lawsuits (which were later consolidated) seeking control of the Gold Strike Heights residential subdivision.  The "Weiner Parties" (individuals and entities affiliated with Mark Weiner, who acquired majority control of the association) and the "Homeowners" (individuals owning lots not owned by the Weiner Parties) participated in mediation and signed a written settlement agreement.

1

Pursuant to Code of Civil Procedure section 664.6 [judgment by stipulation], the trial court entered an order for judgment, dismissed all three lawsuits, and included in the judgment all material terms of the agreement.

Appellant Don H. Lee, one of the Weiner Parties, signed the agreement. The next day, however, he asked the trial court to strike three provisions in the agreement before entering judgment: provision 1d. [establishing the term of the current board and officers], 1g. [voiding prior amendments and modifications to the bylaws and covenants, conditions and restrictions (CC&R's)], and 1h. [requiring amendments to articles, bylaws and CC&R's to require a supermajority vote for three years]. The trial court denied Lee's motion.

Lee now contends (1) the challenged provisions violate the portions of the Davis-Stirling Common Interest Development Act (the Act)[1] (Civ. Code, § 1350 et seq.) requiring secret elections and an independent third party counting the ballots; (2) provision 1d. violates a portion of the Corporations Code governing the terms of board members; and (3) the challenged provisions violate public policy.[2]

We conclude the trial court did not err in including the challenged provisions in the judgment. We will affirm the judgment.

BACKGROUND

Gold Strike Heights is a residential subdivision in Calaveras County. The subdivision's developer recorded a declaration of restrictions (CC&R's) in 2002,

---

[1] The Act was repealed, revised and renumbered in 2012 (Stats. 2012, ch. 180 (Assem. Bill No. 805), eff. Jan. 1, 2014); references to the Act are to the statutes in effect at the time of judgment.

[2] The Homeowners claim Lee lacks standing because he is not currently a member, officer or director of the Association. But the issue presented is whether the trial court erred in entering judgment and dismissing three cases in which Lee was a named party. Accordingly, we will address the merits.

designating the subdivision as a senior citizen housing development. The developer contemporaneously established the Gold Strike Heights Association (Association), a California nonprofit mutual benefit corporation. The CC&R's declared each owner of a lot within the subdivision a member of the Association. The Association is governed by an elected board of directors, which has the power to levy assessments, adopt and enforce community rules, and impose disciplinary action against Association members. These features make the Association a common interest development under Civil Code section 1352 of the Act.

The developer abandoned Gold Strike Heights after building homes on fewer than half of the lots and before completing promised common area improvements. Thirty-one bare lots in the subdivision were acquired in 2005 and 2006 by Mark Weiner and entities he controlled. Ownership of these lots gave Weiner a 63 percent majority vote in the Association; he used that majority in 2007 to nominate and elect a board of directors which thereafter made substantial changes to the Association's governance. Lee, an employee of one of Weiner's companies, served as an Association director and officer between 2007 and 2010.

The three consolidated cases arose from a contentious dispute over control and management of the subdivision between Weiner and his affiliates on one side and most of the Gold Strike Heights homeowners on the other side. In February 2011, the two factions and their respective attorneys participated in a lengthy but successful mediation. Following many weeks of negotiation, the parties signed a written settlement agreement.

After signing the agreement, Lee moved the trial court to strike three provisions and enter judgment on the remainder, or in the alternative, to declare the entire agreement illegal and unenforceable. The challenged provisions were as follows:

"1d. The parties agree that the Board of Directors of the [Association], as presently constituted . . . [,] will remain as the Board of Directors and its officers for a period of three (3) years . . . ;"

"1g.  The parties agree that all amendments or modifications of the Bylaws and CC&Rs . . . since July 1, 2010, are withdrawn, void and of no further force and effect;" and

"1h.  The parties agree that . . . amendments to the Articles, Bylaws and/or CC&Rs of the [Association] will require a super-majority vote of 75% of the membership for a period of three (3) years . . . ."

Each of the challenged provisions involved election of the board of directors and changes to bylaws and CC&R's, and each had been expressly labeled a "material" term in the agreement.

The trial court denied Lee's motion, granting instead an opposing motion to enter judgment enforcing the entire agreement.

DISCUSSION

I

Lee contends the challenged provisions violate the portions of the Act requiring secret elections and an independent third party counting the ballots.

The Act was enacted in 1985 to consolidate in one place an array of statutes governing common interest developments and, among other things, "resolve problems faced by homeowners and associations in the operation of common interest developments, particularly the collection of assessments and amendment of governing documents."  (1 Sproul & Rosenberry, Advising Cal. Common Interest Communities (Cont.Ed.Bar 2010) § 1.4, p. 6.)  The Act includes very specific and complex rules about how and when board elections are to take place.  (Civ. Code, § 1363.03 [requiring secret ballots with double envelopes to be opened and tabulated during a noticed and open meeting by a specially appointed inspector of elections].)

Although Lee argues that provisions 1d. [establishing the term of the current board and officers], 1g. [voiding prior amendments and modifications to the bylaws and CC&R's], and 1h. [requiring amendments to articles, bylaws and CC&R's to require a

4

supermajority vote for three years] violate the Act, he does not cite to portions of the Act governing the term of the current board and officers, or the manner in which articles, bylaws and CC&R's are modified, and he does not show exactly how the challenged provisions are in conflict with the Act. Instead, he simply cites to provisions requiring secret ballots counted by third parties. Lee has failed in his burden on appeal to show that provisions 1d., 1g. and 1h. violate the Act.

II

Lee next contends provision 1d. [establishing the term of the current board and officers] violates Corporations Code section 7220, subdivision (a), which prohibits board members of California nonprofit corporations from extending their own terms of office. Lee draws our attention to the following provision: "No amendment of the articles or bylaws may extend the term of a director beyond that for which the director was elected, nor may any bylaw provision increasing the terms of directors be adopted without approval of the members . . . ." (Corp. Code, § 7220, subd. (a).) Lee's reliance on this provision is misplaced.

Under the parties' agreement, the Association's board members "will remain [in office] until the regular general election in June of 2014." Lee does not point to evidence of when the board members were elected or for how long, although he does imply that the challenged provision would extend their elected terms. The statutory provision he cites, however, only prohibits the extension of a sitting director's term of office when the extension is accomplished by an amendment to the Association's articles or bylaws. (Corp. Code, § 7220, subd. (a).)

Lee relies on *Burke v. Ipsen* (2010) 189 Cal.App.4th 801, but that case does not support his contention. *Burke* involved bylaw amendments proposed by the board of directors of a labor union which, among other things, extended the directors' terms of office and substantially increased membership dues. (*Id*. at p. 805.) Unlike *Burke*, this

5

case does not involve amendments to articles or bylaws effectuated by the board of directors. Provision 1d. merely maintains the status quo for a period of time.

III

In addition, Lee argues that the challenged provisions violate public policy.

Settlement agreements are contracts subject to the same principles as other contracts, meaning that courts should try to interpret them as lawful and operative without violating the intent of the parties. (*Kaufman v. Goldman* (2011) 195 Cal.App.4th 734, 745.) As the court in *Kaufman* observed, " 'Freedom of contract is an important principle, and courts should not blithely apply public policy reasons to void contract provisions.' " (*Ibid.*, quoting *VL Systems, Inc. v. Unisen, Inc.* (2007) 152 Cal.App.4th 708, 713.) Further, the California Supreme Court, calling public policy an "unruly horse, astride of which you are carried into unknown and uncertain paths" stated long ago that "unless it is entirely plain that a contract is violative of sound public policy, a court will never so declare." (*Stephens v. Southern Pacific Co.* (1895) 109 Cal. 86, 89 (*Stephens*).)

The quoted statement from *Stephens* was cited in *Bovard v. American Horse Enterprises, Inc.* (1988) 201 Cal.App.3d 832, one of the rare cases in which a California court concluded that a settlement agreement was illegal and void. The voided contract was for the manufacture and purchase of drug paraphernalia which the trial court held was contrary to the public policy set out in statutes barring possession of marijuana. (*Id.* at pp. 839-840.) But the appellate court's analysis of illegality went beyond mere citation of the marijuana statute; it carefully applied the factors set forth in the Restatement Second of Contracts, section 178 [when a term is unenforceable on grounds of public policy].

"A promise or other term of an agreement is unenforceable on grounds of public policy if legislation provides that it is unenforceable or the interest in its enforcement is clearly outweighed in the circumstances by a public policy against the enforcement of such terms." (Rest.2d Contracts, § 178, subd. (1).) Factors weighing in favor of a

6

contract's enforcement include "(a) the parties' justified expectations, (b) any forfeiture that would result if enforcement were denied, and (c) any special public interest in the enforcement of the term." (Rest.2d Contracts, § 178, subd. (2).) Factors weighing against enforcement include "(a) the strength of that policy as manifested by legislation or judicial decisions, (b) the likelihood that a refusal to enforce the term will further that policy" and two factors involving misconduct. (Rest.2d Contracts, § 178, subd. (3).)

Here, in considering the parties' justified expectations, paragraph (F) of the agreement says the purpose of the agreement was "to obtain complete peace" with respect to the claims raised in the litigation. Lee acknowledges that, from 2007 through 2010, the Association's board of directors was "dominated by" Indian Village Estates, LLC, an entity controlled by Weiner. Following a contested election in July 2010, the board was dominated by the Homeowners. Sixteen of the Homeowners were plaintiffs in the 2010 complaint accusing Weiner, Lee and Weiner's son of fraud and other serious misconduct.

Among other things, the challenged provisions were intended by the parties to establish stability, eliminate litigation, and give Weiner meaningful input but not unfettered control.

A spokesman for the Homeowners stated in a declaration before the trial court that "severance of any one of these [challenged] provisions would disrupt the entirety of our agreement from the standpoint of what we fairly bargained for in the negotiating process at the mediation." There were 13 provisions designated as "material condition[s]" on the face of the agreement; all three of the challenged provisions were designated material. The record indicates that striking the challenged provisions at the behest of Lee would deprive the other parties of their justified expectations.

Regarding the other factors in favor of enforcement, there is no evidence of a "forfeiture" or "special public interest."

7

Turning to the factors that would weigh against enforcement, the Act seeks to assure fairness in decisions affecting the separate property interests of Association members. But given the history of the Association, Lee has not established that the Act's policy goals would be furthered by striking the challenged provisions. Moreover, the remedy for violation of the election provisions of the Act is an action by a member to have election results declared void. (Civ. Code, § 1363.09 [stating that a court could also impose a civil penalty up to $500].) Lee does not cite to any provision in the Act that would invalidate the settlement agreement provisions.

In sum, Lee has not established that striking the challenged provisions would further public policy; instead, the record indicates that his unilateral request would thwart the policy favoring settlement agreements. (See *Abbott Ford, Inc. v. Superior Court* (1987) 43 Cal.3d 858, 871–873.)

## DISPOSITION

The judgment is affirmed.

                                                      MAURO , J.

We concur:

HULL , Acting P. J.

BUTZ , J.